# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Joyce Rottman,

                Plaintiff,        Case No. 18-cv-10912

v.                                      Judith E. Levy
                                            United States District Judge

Nancy A. Berryhill, Acting
Commissioner of Social Security,      Mag. Judge David R. Grand

                Defendant.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION [22]

Before the Court is Magistrate Judge David R. Grand's Report and Recommendation ("R&R") (ECF No. 22) recommending that the Court grant defendant Commissioner of Social Security's (the "government") motion for summary judgment (ECF No. 19), deny plaintiff Joyce Rottman's ("Rottman") motion for summary judgment (ECF No. 15), and affirm the Administrative Law Judge's ("ALJ") decision. Rottman submitted four objections to the R&R, (ECF No. 25), and the government responded. (ECF No. 26.) For the reasons set forth below, Rottman's objections are overruled, and the R&R is adopted in full.

## I. Background

The Court has carefully reviewed the R&R and is satisfied that it is a thorough account of the relevant portions of the record. The Court incorporates the factual background from the R&R as if set forth herein.

## II. Legal Standard

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are improper, *Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that dispute the general correctness of the report and recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, Rottman's objections must be clear and specific enough that the Court can squarely address them on the merits. *See Pearce*, 893 F. 3d at 346.

The Supreme Court recently articulated the standard the district court must apply when conducting its de novo review. In *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), the Court explained that the phrase "substantial evidence" is a "term of art." *Id.* (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means—and means only—'such

3

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

**III.     Analysis**

**A.     Objection 1**

In her first objection, Rottman argues that the ALJ did not properly weigh the opinion of her endocrinologist, Dr. Ashish Verma. (ECF No. 25 PageID.1384.) Rottman's first objection has three parts. She argues that the ALJ: (1) "selectively chose" from the restrictions in Dr. Verma's opinion in determining the residual functional capacity ("RFC") and provided no reason for disregarding the other restrictions (*Id.* at PageID.1386); (2) provided unpersuasive reasons for giving little weight to Dr. Verma's opinion (*Id.* at PageID.1388, 1390–1395); and (3) impermissibly substituted his own medical judgment for that of Dr. Verma's (*Id.* at PageID.1389.).

Dr. Verma is an endocrinologist who has been treating Rottman since 2006. (Tr. 818.) He completed two nearly-identical medical source statements on July 27, 2016 and October 17, 2016, with the only difference between them being that, in the later-dated statement, he indicated that his medical findings and limitations were present since

4

June 2014, which was not included in his earlier statement. (Tr. 818–19; 1195–96.) Dr. Verma opined that Rottman's symptoms of diabetic neuropathy included sensory changes in both her hands and feet, reflex changes in her feet, grip strength weakness in both hands, pain in her feet and hands, and loss of vibration sense. (Tr. 818.) He also noted that Rottman could sit for up to four hours, and stand/walk for one hour. (*Id.*) He stated that she could lift or carry five pounds for up to one-third of an eight-hour work day, and that she would need breaks every one to two hours to check her blood sugar. (Tr. 819.) He also stated that she would be able to occasionally use her extremities for simple grasping and reaching, but never for pushing/pulling, fine manipulating, or foot/leg controls. (*Id.*) He also noted that, while engaging in occasional standing or walking, Rottman should use a cane because she has "neuropathy legs with poor balance." (*Id.*)

In his decision, the ALJ considered Dr. Verma's opinions, and, while the ALJ did "not contest that [Rottman] has peripheral neuropathy," he concluded that "this condition has been accommodated by limiting her work at the light exertional level, restricting her use of bilateral foot controls to occasional, and precluding her from work around unprotected

5

heights and moving, mechanical parts." (ECF No. 11-2 at PageID.54.) He also noted that, as to her hands, Rottman's "reduced grip strength that is noted by Dr. Verma has also been accounted for with the limitation that she have only occasional use of bilateral hand controls and that she occasionally handle, finger, and feel with her bilateral upper extremities." (*Id.*)

The ALJ also analyzed Dr. Verma's treatment notes and found certain inconsistencies between Dr. Verma's treatment notes and his opinion set forth above. Specifically, a physical examination conducted on September 9, 2015 indicated that Rottman had 5/5 muscle strength in all muscles. (Tr. 1057.) Further, her medical records show 5/5 muscle strength with normal coordination and normal gait and station on multiple visits to Dr. Verma. (*See, e.g.*, Tr. 412, 417, 421, 424, 428, 432, 506.) The ALJ also noted Rottman's own "self-reported activities of sewing, crocheting, weaving, preparing meals, doing laundry and dishes, participating in war reenactments, riding her motorcycle, and mowing her yard." (ECF No. 11-2 at PageID.54. (*and see* Tr. 66–70, 72, 78, 80, 248–255.)) Her husband, Ronald Rottman, also submitted a function report, which indicated that Rottman did laundry, housekeeping, cut the

6

grass weekly, cleaned the house between one and four hours per day, shopped for groceries, and cooked meals daily. (Tr. 261–268). She also sewed, crocheted, played computer games, and sent text messages. (*Id.*) In reconciling both Dr. Verma's opinion and the record evidence, the ALJ concluded that, "Dr. Verma's opinion is too restrictive." (ECF No. 11-2 at PageID.54.) He reasoned that her activities "show [Rottman's] functioning is not limited to the extent one would expect given the complaints of disabling symptoms… For these reasons, I afford Dr. Verma's opinion little weight." (*Id.* at PageID.55.)

Rottman's first argument in objection one – that the ALJ "selectively chose" from the restrictions in Dr. Verma's opinion when determining the RFC and provided no reason for disregarding the other restrictions recommended by Dr. Verma– must be denied. (ECF No. 25, PageID.1386.) As Rottman acknowledges in her objections, it is well established that an ALJ is not required to discuss "each and every" piece of evidence in the record for his decision to stand. (*Id.* at PageID.1387 (citing *Moretti v. Colvin*, No. 13-01344, 2014 U.S. Dist. LEXIS 957, \*27–28 (N.D. Ohio, Jan. 6, 2014) (quoting *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004))). However, when the ALJ's RFC

7

finding conflicts with the opinion of a medical source, the ALJ must explain why the opinion was not adopted. Moretti, No. 13-01344, 2014 U.S. Dist. LEXIS at *28 (citing SSR 96-8p, 1996 SSR LEXIS 5, *20, 1996 WL 374184, *7 (July 2, 1996)).

Here, as set forth above, the ALJ addressed the reason why his RFC finding did not fully adopt all of Dr. Verma's opinions. Specifically, he addressed the consistency and inconsistency of Dr. Verma's opinion with Dr. Verma's own medical evidence in the record, as well as Rottman's daily functions and activities. The ALJ did not fail to resolve a conflict in evidence, but rather resolved it unfavorably to Rottman. As the R&R correctly lays out in detail, the ALJ's findings were supported by significantly more than "a mere scintilla" of evidence. *Biestek*, 139 S. Ct. at 1154. Further, the ALJ's justification for giving Dr. Verma's opinion little weight "permits the claimant and a reviewing court a clear understanding of the reasons for the weight given [to the doctor's] opinion." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 805 (6th Cir. 2011). Thus, Rottman's first argument is overruled.

Rottman's second argument in her first objection comes down to a request that this Court reweigh Dr. Verma's opinion evidence. Rottman

8

argues that the ALJ's reasons for according Dr. Verma's opinion little weight are unpersuasive because: (1) the ALJ should not have considered Dr. Verma's treatment notes as evidence against his medical source statement; and (2) the ALJ failed to consider the way Rottman engaged in the activities of daily living (such as, for example that she rides a three-wheeled motorcycle with a push-button starter, rather than a two-wheeled motorcycle with a kick starter).

In outlining this portion of her objection, Rottman argues that the record could also have supported a favorable finding. But, as the R&R explained, an ALJ's decision can be supported by substantial evidence even where substantial evidence may also support the opposite conclusion. (ECF No. 22, PageID.1373); *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.")) Additionally, it is entirely appropriate for an ALJ to compare a medical source statement to the physician's own treatment notes. Indeed, a

9

physician's treatment notes are relevant evidence and an ALJ's failure to consider them may result in remand. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378–79 (6th Cir. 2013).

Here, as set forth above, the ALJ justified his factual findings with a detailed examination of the record, and a reasonable person could find that the ALJ's opinion was supported by substantial evidence. *Biestek*, 139 S. Ct. at 1154. For example, the ALJ reasonably found that Rottman's crocheting and weaving activities necessarily require a degree of fine manipulating, even though Dr. Verma indicated that Rottman would not be able to perform fine manipulation. Additionally, Rottman's evidence showed that she played computer games, texted, and cooked, which also require a degree of fine manipulation. And Rottman's motorcycling activities, though performed on a three-wheeled motorcycle with a push-button starter, also require some degree of balance and coordination, which is inconsistent with Dr. Verma's indication that she had "poor balance." The ALJ's determination to afford Dr. Verma's opinion "little weight" therefore is supported by substantial evidence, and the Court cannot reweigh it. In conclusion, Rottman's second argument in her first objection is overruled.

Rottman's final argument in support of her first objection, that the ALJ impermissibly substituted his medical judgment for that of Dr. Verma's when he determined the effect of her peripheral neuropathy in her RFC, cannot be considered. "A claim raised for the first time in objections to a magistrate judge's report is deemed waived." *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 518 (6th Cir. 2010) (citing *Ward v. United States*, 208 F.3d 216, 216 (6th Cir. 2000)). And this argument would not succeed even if it had not been waived. It is well-settled law that an ALJ's RFC determination need not be supported by a physician's opinion. *See Mokbel-Aljahmi*, 732 F. App'x at 400–401 (citing cases). It was therefore permissible for the ALJ to deviate from Dr. Verma's opinion based upon the record before him. *Id.* Therefore, Rottman's last argument in her first objection is overruled.

B. **Objection 2**

Rottman's second objection is that the ALJ failed to provide "even one iota of record evidence" in support of his decision to assign little weight to the opinion of Dr. Ennes.[1] (ECF No. 25, PageID.1396–97.) For

---

[1] It appears that the government understood Rottman's second objection to be that the ALJ did not provide specific pin citations to the record. (ECF No. 26, PageID.1413). But a closer look at Rottman's objection indicates that her argument

instance, she argues that the ALJ's failure to discuss any of the testimony about her level of difficulty, level of pain, accommodations, and limitations when engaged in the cited activities of daily living render his conclusions improper.

Dr. Diana Ennes, M.D. is Rottman's orthopedic physician. (Tr. 1240.) Dr. Ennes provided two medical source statements that are nearly identical, except that her second medical source statement states that her findings have been present since at least June 2014, which is not present in her first statement. (Tr. 821, 1240.) Her medical source statement provides Rottman's diagnoses as multiple trigger fingers, De Quervains, and shoulder/tendon bursitis. (*Id*.) She noted that Rottman has reduced range of motion in her fingers, neuropathy, muscle weakness in both shoulders, reduced grip strength in both hands, experiences pain

---

goes further and will be addressed as such as set forth above. However, to the extent that Rottman's second objection merely regards the ALJ's use of specific pin cites to the record, the Court agrees with the R&R's handling of this issue and adopts it here. The R&R states, "[w]hile the ALJ did not include precise citations to the record in his discussion of Dr. Ennes' opinion, (Tr. 19), he did specify the activities that he found belied Dr. Ennes' opinion (*id*.), and earlier in his decision the ALJ provided citations for those activities. (*See* Tr. 15 (noting that Rottman 'does laundry and dishes, weaves on a loom, knits, crochets, sews, cooks, complete meals, and is able to use a riding lawn mower to cut the grass,' 'rid[es] her motorcycle,' 'participates in reenactments of the French and Indian wars,' and 'sews, knits, crochets, and weaves.'" (internal citations omitted).

in her right knee and both shoulders, and swelling in her fingers. (*Id*.) Notably, Dr. Ennes's report left a portion blank where the form would have had her indicate whether Rottman needs an option to take unscheduled breaks if placed in a competitive eight-hour work day, or whether she has any sitting or standing limitations. (*Id*.)

The ALJ considered Dr. Ennes's statement and stated, "[a]gain, [Rottman's] self-reported activities of sewing, knitting, crocheting, playing video games, cooking, and doing laundry and dishes shows she has the ability to at least occasionally handle, finger, and feel with her bilateral upper extremities despite these conditions. Accordingly, I afford Dr. Ennes's opinion little weight." (Tr. 21.)

Despite not discussing the specific limitations Rottman cites in her objection, the ALJ did not err. As set forth above, the ALJ was not required to cite every piece of evidence. And the ALJ's analysis gave "good reasons" which are "supported by evidence in the case record" for his decision to afford little weight to Dr. Ennes's opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013). For example, he listed the activities that conflict with Dr. Ennes's conclusions. A reasonable person could accept as adequate that the evidence of sewing, knitting,

13

crocheting, cooking, riding a motorcycle – even considering restrictions and limitations –cast doubt on Ennes's assertion that Rottman was unable to engage in "even occasional simple grasping, pushing, and pulling." (ECF No. 11-2, PageID.55.) Hence, the ALJ's ruling is supported by substantial evidence in the record and Rottman's second objection is overruled.

### C. Objection 3

Rottman's third objection concerns the weight given to the opinions of nurse practitioner ("NP") Phillip Sweet and George Pestrue, Ph.D. (ECF No. 25, PageID.1398–99.) As to NP Sweet, Rottman argues that the ALJ should have considered him a "treating source" under the Social Security regulations and his failure to do so was improper. As to Dr. Pestrue, Rottman argument is not well-developed, but the Court understands it as an objection to the weight the ALJ gave to Dr. Pestrue's opinion and will address it as such.

NP Sweet treated Rottman for bipolar disorder and emotional issues every six to eight weeks for two years. (Tr. 814–17.) He opined that she suffered from, among other things, marked limitation in her ability to: understand, remember, and carry out detailed instructions; maintain

14

attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; sustain an ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; complete a normal work day without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; and get along with others. (*Id.*)

The ALJ afforded NP Sweet's opinion "little weight, as it is not in line with the evidence of record" because, throughout her treatment records, Rottman reported that her mental health was improving. (ECF No. 11-2, PageID.55.) He also rejected NP Sweet's evaluation of Rottman's physical impairments because they were also "not generally in line with record evidence." (*Id.*) The ALJ explained his decision for affording NP Sweet's opinion little weight, and a reasonable person could accept these conclusions as adequate. *Biestek*, 139 S. Ct. at 1154.

Further, Dr. Pestrue, an agency evaluating psychologist, opined that Rottman's "unstable blood sugar would make it difficult for her to maintain a regular job." (Tr. 404.) But Dr. Pestrue is not a medical doctor,

15

and the ALJ used his discretion to afford Dr. Pestrue's opinion "some weight to the extent it shows [Rottman's] mental impairments impact her social functioning." (ECF No. 11-2, PageID.56.) The ALJ also addressed the limitations recommended by Dr. Pestrue when the ALJ "restrict[ed] her only to occasional interaction with supervisors and coworkers and no interaction with the general public." (*Id.*)

Rottman argues that the ALJ should have considered Dr. Pestrue and NP Sweet's opinions as "other relevant factors" under 20 C.F.R. 404.1527(c)(6) ("§1527"). Section 1527 analysis applies to treating and medical source opinions. A nurse practitioner is not considered a "treating medical source" under 20 C.F.R. § 404.1513, but instead is listed under "other [nonmedical] sources." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Under § 1527, when weighing opinion evidence from an "other source," the ALJ need not apply the §1527 factors that would be applied for treating or medical source physician. *See* §1527(f). And in the Sixth Circuit, "an ALJ has discretion to determine the proper weight to accord opinions from "other sources" such as nurse practitioners." *Cruse*, 502 F.3d at 541 (internal citations omitted). The ALJ's analysis and decision not to strictly apply the §1527 factors to NP

Sweet and Dr. Pestrue, as set forth above, passes the "good reasons" test and is supported by substantial evidence. *See Gayheart,* 710 F.3d at 380. Accordingly, Rottman's third objection is overruled.

### D. Objection 4

In her final objection, Rottman argues that the Court should reverse the ALJ's decision, find her disabled, and issue a remand for an immediate award of benefits. Because the Court is adopting the R&R upholding the ALJ's determination in full for the reasons stated above, this objection is overruled as moot.

### IV. Conclusion

Rottman's objections (ECF No. 25) are overruled. Accordingly, the Report and Recommendation (ECF No. 22) is **ADOPTED**, the government's motion for summary judgment (ECF No. 19) is **GRANTED**, and Rottman's motion for summary judgment (ECF No. 15) is **DENIED**.

IT IS SO ORDERED.

Dated: August 22, 2019  s/Judith E. Levy
   Ann Arbor, Michigan  JUDITH E. LEVY
                                                 United States District Judge